[Civil No. 3509. Filed March 18, 1935.]

[42 Pac. (2d) 405.]

FANNY WALKER, Appellant, v. PEOPLES FI-
NANCE AND THRIFT COMPANY, a Corpora-
tion, Appellee.

Mr. William Spaid and Mr. John W. Ross, for Appellant.

Mr. William R. Misbaugh, for Appellee.

LOCKWOOD, C. J.—Fanny Walker, hereinafter called plaintiff, brought suit against Peoples Finance and Thrift Company, a corporation, hereinafter called defendant, asking that certain loans which it was alleged defendant had made to her be declared null and void, and that defendant be required to return to her certain collateral security held in connection with the loans, together with all sums which had been paid by her thereon. Defendant demurred to the complaint on the ground it did not state a cause of action, which demurrer was sustained, and, counsel for plaintiff declining to plead further, judgment was rendered in favor of defendant. From such judgment this appeal was taken.

■ The facts alleged in the complaint, which we must of course take to be true for the purpose of this appeal, are substantially as follows: Defendant is a licensed money-lender under the provisions of chapter 45 of the Revised Code of 1928 (section 1989 et seq.), commonly known as the Small Loans Act, and made certain loans to plaintiff as follows: (a) December 17, 1930, $240.20; (b) December 17, 1930, $240; (c) September 4, 1931, $100; (d) November 27, 1931, $280.15. Loan (a) above set forth was in reality a renewal of a certain loan made by defendant to one Boyd King at a previous time, which for some reason was assumed by plaintiff. All of these loans were evidenced by certain promissory notes on forms which provided for a reasonable attorney's fee in case of the sale of any collateral, and did not specifically show certain things required by section 2008, Revised Code 1928.

At the time of making the loan defendant delivered to plaintiff a pass-book of the type described in section 2008, *supra,* but it did not show the nature of the security given as collateral for the loan, nor did it have printed thereon section 2003, Revised Code 1928. Each of these notes on its face bore interest at the rate of 3½ per cent. per month, and various payments have been made thereon by plaintiff. On September 14, 1933, and long after the last of said notes was due, defendant served notice upon plaintiff that because of nonpayment the property pledged as security therefor would be sold in accordance with the provisions of the note. On the 2d day of October, 1933, said sale, however, was continued by defendant at the request of plaintiff until December 15, 1933, and thereafter this suit was brought.

It is the contention of plaintiff that the loans evidenced by the notes in question were all loans made under and by virtue of the Small Loans Act, and that

the facts above stated show that the act was not complied with by defendant, so that each and all of the loans, principal and interest, by the provisions of the act were forfeited for such noncompliance.

It is the position of defendant that the loans, as above set forth, were not made under the Small Loans Act, in which case the only penalty for the charge of usurious interest would be the forfeiture of interest, or, that if they are "small loans" within the meaning of the act, there was no usury therein and therefore no forfeiture of the loans.

In order to discuss the case intelligently, it is necessary that we set forth briefly certain provisions of our Code relevant to the facts. We quote as follows:

"1884. Usury prohibited; penalty. No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than ten dollars on one hundred dollars for one year; any person contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest.

"1885. Payment of usurious interest to apply on principal. Where a greater rate of interest than ten per cent per annum has been contracted for, reserved, or received, directly or indirectly, all payments of money or property made on account of such interest, or as inducements to contract for more than ten per cent per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal, and in an action brought to recover the amount of the obligation the court shall render judgment for no greater sum than the balance found due upon the principal, without interest, after deducting such payments."

"1989. Small loan business regulated; license; definition of terms. It shall be unlawful, without first obtaining a license as provided in this chapter

for any person to transact the business of making small loans, at a charge therefor of interest exceeding the legal contract interest rate of this state. . . .

"Terms used in this chapter, unless the context otherwise required, are defined: . . . 'small loan' means a loan of money, or other valuable thing, not exceeding three hundred dollars to one person; 'money-lender' means a person, directly or indirectly transacting the business of making small loans at more than the legal contract interest rate of this state, licensed or unlicensed; 'charge' or 'charges,' mean the unit rate charged or contracted for a small loan and includes the aggregate interest or compensation for the use or forbearance of money, or thing of value, the reimbursement of expenses for the service and accommodation of the borrower; and an indemnity contribution to a fund for off-setting any losses sustained from non-payment of loans, or insufficient security."

"1998. Complaint of violation; notice of charges; hearing; suspension of license. Upon complaint to the licensing official of a violation of this chapter, he shall fix a day for the hearing of the complaint. . . . If the licensing official determines that a licensed money-lender has knowingly violated a provision of this chapter he shall suspend such license, and shall serve upon such licensed money-lender ·a copy of his finding. . . . "

"2003. Forfeiture of usurious small loans. A money-lender, whether licensed under this chapter or not, charging or receiving usury on a small loan, shall forfeit such loan."

"2005. Industrial lenders' plan; maximum charges. Licensed money-lenders may make loans at a rate not exceeding three and one-half per cent per calendar month inclusive of all charges incident to making such loan, if made upon a plan whereby: The borrower has the privilege of repayment in approximately equal weekly or monthly instalments of principal during not less than five months or more than twenty months, and to anticipate payment on principal in advance of agreed dates and terminate future charges on such sums paid; that the borrowers are

required to execute written evidence of such loans stating the terms thereof; that the licensee charges no fine for default in prompt payment of any instalment of the loan; and that the charges for the making and use of such loan be computed upon the unpaid balance of principal, for the actual time due and not be payable in advance, or compounded. A money-lender shall not charge or receive an additional sum for preparing a loan application, for investigating the credit of an applicant or of his guarantor, for appraising any chattels offered as security, for examining public records of liens or encumbrances, or otherwise for services, expenses, brokerage or fines, whether a loan is granted or not, except the lawful fees actually and necessarily paid out by the licensee to a public officer, for filing or recording in a public office, or for acknowledging, the instrument securing the loan. If greater aggregate charges be collected or received on any loan than the maximum charges authorized hereby, such loans shall be usurious.''

''2008. Manner of making loan; payment; satisfaction. Every licensed money-lender shall state in every evidence of indebtedness, the date of its execution, the amount of money actually lent, the charges to be paid for compensation, expenses and losses and the dates and amounts of repayment agreed upon, and delivered to the borrower, at the time a loan is made, a pass book, or card stating in clear terms the date, amount and compensation for interest, fees, expenses and losses for the loan and dates and amounts of repayment agreed upon, the nature of the security given, also the names and addresses of both borrower and licensed money-lender. On the back of such pass book, or card, shall be printed a copy of the section of this chapter pertaining to forfeiture of usurious loans in type not smaller than eight point, and at the time each payment is made, enter it therein, and return to the borrower, or give a receipt for every payment, with date, and delivery to any borrower promptly upon his demand, a copy of any note or security taken in connection with a loan to such borrower, and, upon repayment of a loan in full, mark indelibly every obligation signed by the bor-

rower with the word 'paid' or 'canceled,' satisfy any mortgage, cancel and return any note and assignment given as security, and surrender any personal property pledged.''

"2013. Violations defined; penalty. Any money-lender violating the penal provisions of this chapter shall be guilty of a crime and punished by a fine of not exceeding five hundred dollars or by imprisonment not exceeding six months, or by both. Any agent or other employee of the money-lender who knowingly participates in a violation of this chapter shall be guilty of a misdemeanor. No unlicensed money-lender shall be criminally liable unless the charges made by such small loan be in excess of twelve per cent per annum.''

██ It will be seen it is necessary for us first to determine whether the ''small loan,'' defined in section 1989, *supra,* refers to an aggregate sum which is the maximum indebtedness which may be outstanding at one time at a rate exceeding the legal contract one, or whether it simply limits the amount of each separate loan made at a given time to $300. It is the rule that acts of this class are to be liberally construed to prevent the abuses they are intended to correct. *Gibbs-Hargrave Shoe Co.* v. *Peek,* 212 Ala. 633, 103 So. 672. While the act is not specific in this respect, when we consider the history of the various small loan acts of the country, the evils to be averted by their adoption and the practical impossibility of restricting the extremely high rate of interest allowed to *bona fide* small loans, if the aggregate amount owed at any one time is permitted to exceed $300, we are of the opinion it was the intention of the legislature in defining ''small loans'' to limit them to an aggregate amount of principal of loans outstanding to one person of $300, rather than to permit an indefinite number of loans, each under $300, at the high interest rate, provided they were made on different dates. It will also be noted that it is only small loans

made by a "money-lender," as .defined in section 1989, *supra,* that are subject to the severe penalty set forth in section 2003, *supra.*

■■ We hold, therefore,. thè term "small loans" applies only to loans which aggregate an amount of principal due from one person to $300, and that any loan made by a lender which would increase the total which has already been loaned to one person beyond $300 is automatically excluded from the term "small loans," as set forth above. Adopting this definition . of "small loans," it will be seen upon comparing and analyzing all the sections quoted above that the legislature has in effect, though not by name, divided loans, usurious and nonusurious, into several classes determined by (a) the amount of the loan; (b) the rate of interest thereon; and (c) the person by whom made. It has then fixed various penalties for different classes of usurious loans. These usurious loans may be described as follows: (1) Where the aggregate debt outstanding is a small loan, the rate of interest greater than $3\frac{1}{2}$ per cent. per month, and the loan is made by a person licensed to transact the business of making small loans at more than the legal contract rate. (2) When the aggregate debt is a small loan, the rate greater than the legal contract rate of interest, and the loan made by a person regularly engaged in the business of making small loans, but not licensed under chapter 45, *supra.* (3) When the aggregate debt is a small loan, the rate of interest more than the legal contract rate and the loan made by a person not engaged in the business of money lending. (4) When the loan is not a "small loan," within the meaning of the statute, the rate of interest is greater than the legal contract rate, and the loan made by any person, whether regularly engaged in the loaning of money or not. Nonusurious loans are (5) small loans at a rate not exceeding $3\frac{1}{2}$ per cent. per

month, made by a licensed money-lender; and (6) all other loans where the rate of interest does not exceed the legal contract rate.

The penalty for making a usurious loan of classes 1 and 2 is a forfeiture of the entire loan, principal and interest. Section 2003, *supra*. The penalty for making a usurious loan of classes 3 and 4 is a forfeiture of all interest, with a proviso that any payments made shall be deemed to have been made on account of the principal. Section 1885, *supra*.

■ Applying this rule to the facts pleaded, it appears that the last three loans set forth in the complaint cannot be considered as falling within class 5 of the nonusurious loans, for any one of them, if added to the first loan, would bring the total amount of principal due defendant from plaintiff above $300. Nor do they fall within class 6, for the rate of interest exceeds the legal contract rate. They must therefore come within one of the first four classes, and be usurious in their nature. Under what classification do they then fall? We think there can be no doubt that they come within class 4, for by the definition of the term "small loan" they are excluded from classes 1, 2 and 3. The penalty for the making of such loans is the forfeiture of all interest, but the principal may be recovered by defendant after deducting therefrom any payments already made on account of the loan.

■ We next consider the first loan. It appears that it was made by a licensed money-lender, that the amount was under $300, and that the rate of interest charged on its face was 3½ per cent. per month. If nothing further appears, the loan would obviously be a nonusurious one of class 5. It is urged, however, by plaintiff that it is usurious for the reason that it provides for the collection of an attorney's fee in addition to the 3½ per cent. interest and also that the

note and pass book, furnished with the loan, do not comply with the provisions of section 2008, *supra*. So far as the attorney's fee is concerned, there seems to be a difference in the authorities upon this subject. Some courts hold that if the attorney's fee, when added to the stipulated rate of interest, brings the total amount in excess of the legal rate, it is usurious. *Midwest Properties Co.* v. *Renkel,* 38 Ohio App. 503, 176 N. E. 665; *Williams et al.* v. *Rich,* 117 N. C. 235, 23 S. E. 257. But the overwhelming weight of authority is to the contrary. *Fowler* v. *Equitable Trust Co.,* 141 U. S. 411, 12 Sup. Ct. 8, 35 L. Ed. 794; *Commercial Invest. Trust, Inc.,* v. *Eskew et al.,* 126 Misc. 114, 212 N. Y. Supp. 718; *First Nat. Bank* v. *Cargill Elevator Co.,* 155 Minn. 30, 192 N. W. 111; 66 C. J. 235.

The case of *Foundation Finance Co.* v. *Robbins,* 179 La. 259, 153 So. 833, cited by plaintiff, in our opinion, supports rather the contention of defendant upon this point. We hold, therefore, that the addition of the attorney's fee did not make the note in question usurious.

■ So far as the failure to set forth on the face of the note and pass book the various items which it is claimed section 2008 requires to appear thereon, we are of the opinion that, even if the situation be as stated by the plaintiff, this does not make the note void.

The case of *Michigan Loan Assn. of Jackson* v. *Cahill,* 253 Mich. 358, 235 N. W. 182, 184, 74 A. L. R. 1181, is virtually on all fours with the present case on the point involved. There the court said:

"The defendants' second contention is that the note is void because the plaintiff did not comply with section 14 of Act No. 181 of the Public Acts of 1925 which reads: 'Every licensee shall: Deliver to the borrower at the time a loan is made, a statement in the English language showing in clear and distinct

terms the amount and date of the loan and of its maturity, the nature of the security, if any, for the loan, the name and address of the borrower and of the licensee, and the rate of interest charged. Upon such statement there shall be printed in English a copy of section thirteen of this act.' (Being the usury statute.)

"Section 13 provides that the loan or security shall be void and unenforceable in case of excessive interest charges, but nowhere in the act is it indicated that the Legislature intended to void the loan for failure to furnish the statement required by section 14. It surely was not intended to permit a borrower to escape the payment of a legal debt because such a statement was not furnished. It does not go to the substance of the transaction, but was merely intended as evidence to the borrower that he was not assuming an obligation to pay unlawful interest. It was not a requirement that affects the validity of a loan." (Parenthetical matter above ours.)

The remedy for failure to comply with these provisions is not, like the charging of usury, a forfeiture of the loan, but rather a procedure under section 1998, *supra,* to revoke the license of the moneylender.

Such being the case, since none of the four notes in question were void, although the last three could bear no interest and were entitled to have credited thereon any payments already made, the trial court properly sustained the general demurrer. The judgment is affirmed.

McALISTER and ROSS, JJ., concur.