IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JANE H. MCNAMARA; KIM ROSENTHAL; and MADELEINE
KESSELMAN, qualified electors, *Plaintiffs/Appellants,*

*v.*

CITIZENS PROTECTING TAX PAYERS, an Arizona non-profit
corporation; COMMITTEE CITIZENS PROTECTING TAXPAYERS IN
OPPOSITION TO RC-2-11, a political committee, *Defendants/Appellees.*

No. 1 CA-CV 13-0551

FILED 10-30-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV 2013-008922
The Honorable Mark H. Brain, Judge

**AFFIRMED**

---

COUNSEL

Coppersmith Brockelman, P.L.C., Phoenix
By L. Keith Beauchamp, Roopali H. Desai, Melissa A. Soliz
*Counsel for Plaintiffs/Appellants*

Tiffany & Bosco, P.A., Phoenix
By Timothy A. LaSota, William M. Fischbach, III
*Counsel for Defendants/Appellees*

_____

**OPINION**

Presiding Judge Margaret H. Downie delivered the opinion of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

_____

**D O W N I E**, Judge:

**¶1**　　　　The dispositive issue in this appeal is whether qualified electors may maintain a private cause of action based on alleged violations of Arizona Revised Statutes ("A.R.S.") section 16-915.01 (disposal and use of surplus monies held by political committees).　We conclude no such private right of action exists and therefore affirm the superior court's dismissal of the complaint filed by Jane McNamara, Kim Rosenthal, and Madeleine Kesselman ("Appellants").

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Phoenix City Councilman Sal DiCiccio became the target of a recall effort in 2011.　Appellee Committee Citizens Protecting Taxpayers in Opposition to RC-2-11 ("the Committee") is a political committee formed to counter the recall campaign.　According to Appellants, "the recall effort never got off the ground and ended prior to completion of the petition circulating phase."　The Committee had raised funds, some of which remained in its account when the recall effort concluded.　Meanwhile, DiCiccio formed Appellee Citizens Protecting Tax Payers, Inc. ("Citizens"), a non-profit corporation.　In October 2011, the Committee transferred surplus funds totaling $121,265.37 to Citizens.

**¶3**　　　　Appellants filed a verified complaint in June 2013, alleging that the Committee's transfer of surplus monies to Citizens violated A.R.S. § 16-915.01 and that DiCiccio was illegally using the transferred funds in his 2013 re-election campaign.　Appellants requested injunctive relief and an order requiring Citizens to return the surplus funds to the Committee.

**¶4**　　　　Appellees moved to dismiss the complaint, arguing, *inter alia*, that no private right of action exists for alleged violations of A.R.S. § 16-915.01. After briefing and oral argument, the superior court agreed with Appellees and dismissed the complaint under Arizona Rule of Civil Procedure 12(b)(6).　Appellants timely appealed.　We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

**¶5** We review legal questions and issues of statutory interpretation *de novo*. *See Lincoln v. Holt*, 215 Ariz. 21, 23, ¶ 4, 156 P.3d 438, 440 (App. 2007). We similarly review the dismissal of claims under Rule 12(b)(6) *de novo*. *Coleman v. City of Mesa,* 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012).

**¶6** Section 16-915.01 dictates how political committees are to dispose of "surplus monies."[1] The statute does not expressly state that a private cause of action exists to enforce its terms. Nevertheless, our appellate courts have implied the existence of a private right of action when doing so is consistent with "the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Transamerica Fin. Corp. v. Superior Court*, 158 Ariz. 115, 116, 761 P.2d 1019, 1020 (1988). Evaluation of these factors is a tool of statutory construction designed to discern legislative intent, not a license for the judicial branch to read into a statute something that might be perceived as better effectuating a statute's spirit and purpose. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction."); *New Sun Bus. Park, LLC v. Yuma Cnty.*, 221 Ariz. 43, 47, 209 P.3d 179, 183 (App. 2009) (Courts "are not at liberty to rewrite . . . statute[s] under the guise of judicial interpretation.").

**¶7** Several Arizona appellate decisions have addressed whether an implied private right of action exists under various statutory schemes. In *Transamerica Financial Corp.*, the Arizona Supreme Court held that borrowers have an implied private right of action under the Consumer Loan Act. 158 Ariz. at 116, 761 P.2d at 1020. The court traced the Act's origins, observing that as far back as 1935, it had "recognized a borrower's implied right to enforce provisions of the Small Loan Act by permitting a borrower to seek and receive relief in the courts from loans alleged to be usurious under that act." *Id.* at 117, 761 P.2d at 1021. Although the Act was later amended several times, the legislature took no steps to prohibit a private right of action, indicating "a legislative intent to preserve the private right judicially recognized by the court." *Id.* The court concluded:

---

[1] A.R.S. § 16-901(25) defines "surplus monies" as "those monies of a political committee remaining after all of the committee's expenditures have been made and its debts have been extinguished."

> Since 1919 Arizona's legislative policy has been to forfeit usurious small loans. In 1956 the legislature specifically stated that loans made in violation of the Consumer Loan Act were void and that a licensee had no right to collect principal, interest or other charges. Since *Walker* [*v. Peoples Finance & Thrift Co.*, 45 Ariz. 226, 42 P.2d 405 (1935)], the common law in Arizona has recognized a private right of action to void a usurious contract. The provisions of the Consumer Loan Act are part of the loan contract by operation of law and are enforceable in a contract action between the parties.

*Id.* at 118, 761 P.2d at 1022.

¶8 There is no comparable common law history implying a private right of action to enforce statutes governing the use and disposal of surplus funds held by political committees. And in contrast to the borrowers in *Transamerica Financial Corp.*, Appellants here are more akin to the "incidental beneficiaries" discussed in *Lancaster v. Arizona Board of Regents*, 143 Ariz. 451, 457, 694 P.2d 281, 287 (App. 1984) (holding no private right of action existed for plaintiffs who were "incidental beneficiaries" of a statute requiring specific action by the Board of Regents). Appellants correctly observe that campaign finance laws are intended to benefit the voting public by, among other things, ensuring the transparency and integrity of the process. But whether the legislature intended to permit enforcement of campaign finance statutes through private litigation is an entirely different question.

¶9 It is also important to note that we are not dealing here with a special class of voters for whose specific benefit A.R.S. § 16-915.01 was enacted — a fact that distinguishes this case from *Chavez v. Brewer*, 222 Ariz. 309, 214 P.3d 397 (App. 2009). In *Chavez*, we held that certain qualified electors could maintain a private cause of action based on election officials' alleged failure to provide voting machines in compliance with statutory requirements. *Id.* at 311, ¶ 1, 214 P.3d at 399. The *Chavez* plaintiffs were not simply members of the electorate, but individuals with disabilities and persons whose primary language was not English. *Id.* at 313, ¶ 8, 214 P.3d at 401. The statute they sought to enforce required all polling sites to be equipped with "at least one voting system equipped for individuals with disabilities and accessible to voters in alternative languages." *Id.* at 318, ¶ 28, 214 P.3d at 406. In implying a private cause of action in that context, we stated:

> [T]he overall purpose of the voting machine statutes is to ensure the administration of fair and accurate elections and effectuate [the Help American Vote Act of 2002 ("HAVA")]. To achieve this goal, the legislature enacted some statutes that clearly benefit individuals with disabilities. For example, § 16-442.01 sets forth voting systems criteria designed to guarantee blind and visually impaired voters the opportunity to vote. In addition, § 16-442 provides that only machines that comply with HAVA may be approved, incorporating HAVA's requirement that each polling place provide at least one voting system equipped for individuals with disabilities and accessible to voters in alternative languages. . . . Thus, similar to the statutes at issue in *Transamerica*, the focus of these statutes is protecting the rights of individuals. Moreover, unlike the plaintiffs in *Lancaster*, appellants are not "incidental" beneficiaries of the statutes, but members of "the class for whose especial benefit" the statutes were adopted.

*Id.* Appellants here have neither alleged nor established that they are members of a class of electors for whose "especial benefit" A.R.S. § 16-915.01 was enacted.

¶10 In *Pacion v. Thomas*, 225 Ariz. 168, 169, ¶ 9, 236 P.3d 395, 396 (2010), the Arizona Supreme Court held that the exclusive remedy for violations of A.R.S. § 16-903(A) (requiring candidates to form campaign committees before making expenditures, accepting contributions, distributing campaign literature, or circulating petitions) is the civil penalty set forth in title 16. Rejecting a private challenge to petition signatures obtained before the formation of a campaign committee, the court noted that the legislature had expressly disqualified signatures obtained on initiative and referendum petitions before formation of a political committee, "yet provided only a civil penalty for violations of the campaign finance statutes governing candidates, including § 16-903(A)." *Id.* at 170, ¶ 12, 236 P.3d at 397. The court "decline[d] to infer a statutory remedy into the campaign finance statutes that the legislature eschewed." *Id.*

¶11 Turning to the circumstances of this case, A.R.S. § 16-915.01 appears in title 16 (elections and electors), chapter 6 (campaign contributions and expenses), article 1 (general provisions). Within article 1, private rights of action are expressly prescribed in certain contexts. *See, e.g.*, A.R.S. §§ 16-905(K) ("Any qualified elector may file a sworn

complaint" with the attorney general or county attorney alleging contribution limit violations.), -905(L) (If the attorney general or county attorney fails to institute an action within 45 days after a complaint is filed under (K), "the individual filing the complaint may bring a civil action in the individual's own name."), -912.01(I) (establishing a private right of action for alleged statutory violations by ballot measure committees). The legislature obviously knows how to provide for private rights of action in the campaign finance context when it chooses to do so. As in *Pacion*, we will not "infer a statutory remedy into the campaign finance statutes that the legislature eschewed." *Pacion*, 225 Ariz. at 170, ¶ 12, 236 P.3d at 397.

**¶12** We disagree with Appellants' assertion that A.R.S. § 16-915.01 is "rendered useless" unless an implied private right of action is recognized. As Appellants acknowledge, the enforcement procedures and remedies set forth in A.R.S. § 16-924(A) apply to alleged violations of § 16-915.01.[2] As relevant here, § 16-924(A) provides: (1) if the city clerk "has reasonable cause to believe that a person is violating any provision of this title, except for violations of chapter 6, article 2," the clerk shall notify the city attorney; (2) the city attorney "may serve on the person an order requiring compliance with that provision," which "shall state with reasonable particularity the nature of the violation and shall require compliance within twenty days from the date of issuance of the order;" (3) the alleged violator has twenty days to request a hearing pursuant to title 41, chapter 6; (4) if the alleged violator does not take corrective action within the time specified in the compliance order, the city attorney "shall issue an order assessing a civil penalty of not more than one thousand dollars;" (5) the alleged violator has thirty days after assessment of the civil penalty to request a hearing pursuant to title 41, chapter 6; and (6) a party aggrieved by an order or decision of the city attorney may appeal to the superior court as provided in title 12, chapter 7, article 6. A.R.S. § 16-924(A)-(C).

---

[2]     Appellants filed complaints with the Phoenix City Clerk, the Maricopa County Attorney, and the Arizona Secretary of State on the same day they filed their superior court action. Appellants indicate the County Attorney's office responded that it has no role in "pursuing alleged City election law violations," and the Secretary of State's office stated "it cannot take action until and unless the City Clerk refers the matter." When the parties filed their appellate briefs, the Phoenix City Clerk had not yet acted on Appellants' complaint. Whether Appellants may compel the city clerk to act via mandamus proceedings is not properly before us.

¶13  Appellants' dissatisfaction with the enforcement mechanism and limited remedies prescribed by the legislature for alleged violations of A.R.S. § 16-915.01 is understandable. But the legislature sets policy for regulating and enforcing campaign finance laws. *See, e.g., Van Arsdell v. Shumway*, 165 Ariz. 289, 291, 798 P.2d 1298, 1300 (1990) (election contests "are purely statutory and dependent upon statutory provisions for their conduct."). "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors*, 444 U.S. at 19-20.

¶14  Principled application of tools of statutory construction reveals no legislative intent to establish a private right of action for alleged violations of A.R.S. § 16-915.01. *Cf. City of Sierra Vista v. Sierra Vista Wards Sys. Voting Project*, 229 Ariz. 519, 525, ¶ 21, 278 P.3d 297, 303 (App. 2012) ("Section 16-924 demonstrates a legislative intent to cap civil penalties authorized by title 16, chapter 6, article 1, at $1,000 unless otherwise provided."). Modification of the "comprehensive statutory scheme governing election campaign finance," *Pacion*, 225 Ariz. at 169, ¶ 6, 236 P.3d at 396, if it is to occur, is the prerogative of the legislative branch. *See Hunt v. Norton*, 68 Ariz. 1, 11, 198 P.2d 124, 130 (1948) (If a "statute is oppressive or unworkable, relief lies with the legislative department.").

### CONCLUSION[3]

**¶15** For the reasons stated, we affirm the dismissal of Appellants' complaint. We deny Appellants' request for attorneys' fees. Appellees are entitled to recover their taxable costs upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED : 10/30/2014

---

[3] Based on our determination that no private right of action exists, we need not resolve standing and statute of limitations issues briefed by the parties.