NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TOMI M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.M., L.M., *Appellees*.

No. 1 CA-JV 17-0237
FILED 12-14-2017

Appeal from the Superior Court in Maricopa County
No. JD507511
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Kent E. Cattani joined.

---

**H O W E**, Judge:

**¶1**        Tomi M. ("Mother") appeals the juvenile court's order terminating her parental rights to A.M. and L.M. on the grounds of chronic substance abuse under A.R.S. § 8–533(B)(3) and recurrent removal under A.R.S. § 8–533(B)(11). Mother also appeals the juvenile court's finding that terminating her parental rights was in the children's best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother has used marijuana since age 12 and methamphetamine since age 15. Mother has received substance-abuse treatment many times but has not remained sober longer than one year. Mother has had seven children, and since 2003, the Department of Child Safety has investigated many incidents involving her and her children, from giving birth to a methamphetamine-exposed newborn to failing to protect and care for her children because of substance abuse and domestic violence. By 2011, Mother's parental rights to three of her children had been terminated.

**¶3**        In December 2014, the Department alleged that A.M. was dependent because Mother continued to abuse substances, was unable to provide for A.M.'s basic needs, and had her parental rights to three other children terminated. Mother also had a history of domestic violence with A.M.'s father, Richard K. ("Richard"). During the dependency, Mother participated in her case plan tasks, including substance-abuse treatment, urinalysis testing, a psychological evaluation, individual therapy, parent-aide services, and obtaining stable employment and housing. She also obtained an order of protection against Richard. Thereafter, Mother completed parent-aide services and Terros substance-abuse treatment, and the juvenile court dismissed the dependency in January 2016.

**¶4**        In March 2016, the Department attempted to contact Mother after receiving reports that she was using methamphetamine in A.M. and

L.M.'s presence. Mother was no longer at her residence when Department case workers visited, and in August 2016, the Department learned that Mother was in California with L.M.'s father. In September 2016, the Department received a report from Los Angeles County Child Protective Services that Mother was using methamphetamine and that L.M.'s father had a history of heroin use. The Department located Mother after talking to Richard, who informed the Department that Mother was in jail because he had called the police when A.M. found a liquid-filled needle inside Mother's purse. On September 20, 2016, the Department met Mother in jail where she initially denied drug use but later stated that she would test positive for marijuana and other drugs. Two days later, the Department found the children with Mother's brother and took custody of them based on Mother's admitted recent drug use and extensive history of substance abuse. The Department noted that despite Mother's completion of parent-aide services and substance-abuse treatment, she was unable to maintain her sobriety or the behavioral changes that she had achieved.

¶5        Later that month, the Department petitioned for A.M. and L.M.'s dependency based on Mother's substance abuse, termination of parental rights to her other children, and A.M.'s recent dependency. The juvenile court found that the children were dependent and ordered a case plan of severance and adoption. The Department then moved to terminate Mother's parental rights to both children on the chronic substance abuse ground and the additional ground of prior out-of-home placement for A.M. only. At the outset of the dependency, Mother requested inpatient substance-abuse treatment, and the Department put in a referral to Terros and deferred to its recommendations. Mother agreed to participate in substance-abuse treatment, urinalysis testing, hair-follicle testing, a full parent-aide referral after 30 days' demonstrated sobriety, and supervised visits.

¶6        Mother did not participate in her first scheduled assessment at Terros in October 2016, but she did participate in an assessment the following month. In her assessment, Mother stated that she had domestic-violence issues in her past relationships and that she had completed substance-abuse treatment and domestic-violence classes in the past but had "forgot[ten] to use the learned coping skills." Terros diagnosed Mother with moderate amphetamine-type substance use disorder and moderate cannabis use disorder. Terros noted that Mother had a desire to quit her stimulant use, but her efforts were unsuccessful. Terros further found that Mother's recurrent drug abuse prevented her from fulfilling major obligations at work, school, or home, evidenced by her lack of employment and stable housing. Consequently, Terros referred Mother to supported

family counseling, group counseling, and individual counseling, with a focus on relapse prevention techniques, self-awareness of triggers and cravings, and strategies to maintain sobriety and develop a sober network.

¶7        Mother told Terros that she wanted inpatient substance-abuse treatment. Terros informed her of Maverick House, an inpatient treatment facility, and told her that she would need to participate in services at Terros until she was admitted to Maverick. Mother agreed to continue her intensive outpatient treatment, random drug testing, and individual counseling sessions until Terros could transfer her to Maverick. Mother did not follow through on Terros's attempt to get her into residential treatment, however. Despite Terros's numerous attempts to engage Mother in services, Mother had only attended one individual counseling session and no group counseling sessions. Furthermore, Mother tested positive for amphetamine, methamphetamine, marijuana, and alcohol from October through December 2016. Mother did not respond to any outreach efforts, and Terros ended her services in December 2016.

¶8        Mother's case manager stated in her December 2016 report that she still had concerns about Mother's substance abuse. She noted that Mother's substance abuse had led to A.M. being adjudicated dependent twice by age two. Moreover, the case manager was concerned about Mother's continued substance abuse despite the severance and adoption case plan. In January 2017, Mother told the Department that she was going to engage in outpatient treatment with Community Bridges ("Community"). Community referred Mother for intensive outpatient treatment, individual counseling, group counseling, and a psychiatric evaluation.

¶9        In March 2017, Mother asked about the status of her full parent-aide services referral before the juvenile court. The Department responded that it needed documentation from Community showing that Mother had completed 30 days' sobriety before it would make the parent-aide referral. The juvenile court ordered Community to disclose the information to the Department and to put a parent-aide referral in place within two weeks. Around this time, Mother obtained an apartment with her new boyfriend. Mother also obtained a second order of protection against Richard but had difficulty serving him. Later that month, Mother gave birth to M.M. At the subsequent preliminary protective conference concerning M.M., the parties and the juvenile court determined that parent-aide services were not needed if the Department provided Community with a list of parent-aide objectives.

¶10            In April 2017, Mother underwent a psychiatric evaluation at Community and was diagnosed with unspecified anxiety disorder; unspecified depressive disorder; severe amphetamine-type substance-abuse disorder in early recovery; and moderate cannabis-use disorder in early recovery. Mother received Zoloft to treat her anxiety and depression, but she discontinued the medication because her grandmother made negative comments about the drug and Mother did not like the drug's effects. Later in April, the Department provided Community with a list of parent-aide objectives. Mother's therapist at Community agreed with the parent-aide objectives and had already incorporated some of the objectives into Mother's treatment before receiving them from the Department. Thus, the Department did not provide Mother with a parent aide.

¶11            In May 2017, the juvenile court concurrently held a contested termination hearing for A.M. and L.M. and a dependency hearing for M.M. A Department supervisor testified that Mother was unable to parent and discharge her parental responsibilities because of her history of chronic substance abuse. She further testified that Mother had been abusing substances since 2003, and A.M., L.M., and M.M., were her fifth, sixth, and seventh children involved with the Department because of her substance abuse. The supervisor stated that Mother could maintain her sobriety only for short periods and that her substance-abuse issues would likely continue for a prolonged and indeterminate period. The supervisor testified that the children were in a placement that met their needs and was willing to adopt them, and if that placement was unable to adopt them, the children were otherwise adoptable. She also stated that termination of Mother's parental rights would be in the children's best interests because they deserved to live in a home free of substance abuse and to have stability and permanency in their lives.

¶12            Mother's therapist at Community opined that after two months of sobriety Mother was in the maintenance stage of her sobriety, but on cross-examination he admitted that he was not fully aware of Mother's therapy treatments at Terros and her substance-abuse history. For instance, he testified that Mother had told him that she did not have any individual therapy at Terros and that he had been unaware that Mother had in fact received individual therapy in the previous dependency. This misunderstanding resulted because the therapist relied on Mother's self-reporting and had not reviewed any of Mother's Terros records or spoken to Terros personnel about Mother's previous treatment. He was also unaware that Mother had supposedly ended her relationship with Richard in the previous dependency, but then later had another child with him. The therapist also stated that he believed Mother had only experimented with

marijuana and alcohol in her adolescent years and that she had only been using methamphetamine for a couple of years.

¶13        Mother testified that she had been sober since early February. She further testified that she did not take seriously the previous dependency involving A.M., but that she was taking this case seriously because "everything's on the line right now." Mother stated that she had resumed a relationship with Richard about three months after A.M. was returned to her because she thought that the relationship would improve. She stated that she had relapsed since the last dependency because Richard had mentally and verbally abused her. Mother also acknowledged that she was incapable of taking care of her children while under the influence of substances. Regarding her Terros treatment, Mother testified that she had never informed the Department that Terros did not meet her treatment needs even though she stated at the hearing that she thought its methods and environment were not effective.

¶14        The juvenile court terminated Mother's parental rights to both A.M. and L.M. on the chronic substance abuse ground and the recurrent removal ground for A.M. only. Under the chronic substance abuse ground, the juvenile court found that Mother had a substantial history of chronic substance abuse and that Mother's substance abuse would continue for a prolonged and indeterminate period. Under the recurrent removal ground, the juvenile court found that A.M. was cared for in an out-of-home placement pursuant to court order, A.M. was returned to Mother's custody, and A.M. was removed within 18 months after being returned. Under both grounds, the juvenile court found that the Department had made diligent efforts to provide reunification services and that Mother was unable to discharge her parental responsibilities. The juvenile court also concluded that termination was in the children's best interests because it would help them become adopted and provide stability and permanency. Mother timely appealed.

## DISCUSSION

¶15        Mother argues that insufficient evidence supports the juvenile court's finding that the Department made diligent efforts to provide family-reunification services and that Mother was unable to discharge her parental responsibilities. Mother also argues that termination was not in the children's best interests because insufficient evidence existed for the termination grounds. A juvenile court's termination order is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). "The juvenile court, as the trier of fact in a

termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). This Court will accept the juvenile court's factual findings unless no reasonable evidence supports them and will affirm a termination order unless it is clearly erroneous. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 508 ¶ 1 (App. 2008). Furthermore, this Court will affirm a termination order if any statutory ground is proven and termination is in the children's best interests. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376 ¶ 14 (App. 2010). The juvenile court did not abuse its discretion because sufficient evidence supports the juvenile court's order terminating Mother's parental rights for chronic substance abuse and termination is in the children's best interests.

¶16        To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination and find by a preponderance of the evidence that termination is in the children's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 283, 286 ¶ 15 (App. 2016). As pertinent here, the juvenile court may terminate parental rights when: (1) the parent has a history of chronic substance abuse, (2) the parent is unable to discharge her parental responsibilities because of her chronic substance abuse, and (3) reasonable grounds exist to believe that the abuse will continue for a prolonged and indeterminate period. A.R.S. § 8–533(B)(3); *Raymond F.*, 224 Ariz. at 377 ¶ 15. Additionally, the Department must make diligent efforts to provide a parent with appropriate reunification services before seeking to terminate parental rights on the chronic substance abuse ground. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 ¶ 12 (App. 2005).

## 1. Statutory Ground for Termination

¶17        The juvenile court did not err by finding that the Department proved termination under the chronic substance abuse ground. Mother does not dispute the juvenile court's findings that she had a history of chronic substance abuse and that her substance abuse would likely continue for an indeterminate period. The record supports these findings. First, Mother started using methamphetamine when she was 15 years old. Mother's substance abuse continued throughout most of the dependency, and she failed several drug tests. Second, in determining whether Mother's chronic substance abuse would continue for an indeterminate period, the juvenile court may consider prior substance abuse. *See Jennifer S.*, 240 Ariz. at 287 ¶ 20. This evidence includes "the length and frequency of Mother's substance abuse, the types of substances abused, behaviors associated with

the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Id.* Here, Mother had used methamphetamine for about 14 years, and despite having completed substance-abuse treatment in a prior dependency, still reverted to abusing substances after brief stints of sobriety. Therefore, sufficient evidence supports the juvenile court's finding that she has a history of chronic substance abuse and that it would continue for a prolonged and indeterminate period.

**¶18**        The record also supports the juvenile court's finding that Mother was unable to discharge her parental responsibilities. The term "parental responsibilities" does not refer to any exclusive set of factors and is capable of being understood as the duties and obligations that a parent has to her children. *Raymond F.*, 224 Ariz. at 378 ¶ 20. This standard gives the juvenile court flexibility to consider the specific facts of the case at hand. *Id.* Here, the Department supervisor still had concerns about Mother's ability to maintain her sobriety, to maintain her mental health, to maintain appropriate relationships with men, and to provide stability for her children. While the supervisor noted that Mother could parent while sober, she also noted that Mother failed to retain her sobriety without the supervision and oversight of the juvenile court or the Department. Additionally, the Department supervisor specifically testified that Mother was unable to discharge her parental responsibilities because of her history of chronic substance abuse. While Mother's therapist opined that Mother was in the sobriety maintenance stage, the record shows that her therapist was not fully aware of Mother's substance-abuse history. Furthermore, Mother acknowledged and testified that she could not parent her children while abusing substances. Thus, Mother's chronic substance abuse rendered her unable to discharge her parental responsibilities.

**¶19**        Finally, the record shows that the Department made diligent efforts to provide Mother with reunification services. The Department is not required to provide Mother with every conceivable service or to ensure that she participates in each service it offers, but it must provide her with the time and opportunity to participate in programs designed to help her become an effective parent. *Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157 ¶ 11 (App. 2016). During Mother's previous dependency with A.M. from December 2014 through January 2016, the Department provided Mother with substance-abuse treatment at Terros, urinalysis testing, a psychological evaluation, individual therapy, and parent-aide services. During the current dependency that began in September 2016, Mother agreed to and received substance-abuse treatment, urinalysis testing, supervised visits, and a referral for parent-aide services after 30 days' demonstrated sobriety.

¶20 Mother argues that the Department failed to provide her with full parent-aide services in the current case and thus did not make diligent efforts for reunification. The record shows, however, that Mother was not eligible for full parent-aide services until she had been sober for 30 days, which was a condition she agreed to. Mother testified that she had been sober since early February 2017, so the earliest she could have been offered full parent-aide services was in March 2017. Moreover, at the preliminary protective conference, the parties and juvenile court concluded that a parent aide was no longer needed if the Department provided Community with parent-aide objectives. Although the objectives were sent nearly a month later, Mother's therapist testified that he had already incorporated some of the objectives before receiving them. Furthermore, Mother completed parent-aide services during the previous dependency. As such, the lack of full parent-aide services does not weaken the Department's overall diligent efforts toward reunification.

¶21 Additionally, Mother argues that the Department failed to make diligent efforts toward reunification because she never received inpatient substance-abuse treatment. The record shows, however, that Mother would have received inpatient treatment if she had continued to participate in Terros services. Mother asked the Department and Terros for inpatient services, and Terros informed Mother that she would be admitted to Maverick when a space became available if she continued to participate in its services. Instead, Mother stopped attending any services at Terros. Furthermore, Mother testified that she had never informed the Department that Terros did not meet her treatment needs. Thus, the Department made diligent efforts toward reunification, and the juvenile court did not abuse its discretion by finding that the Department proved termination under the chronic substance abuse ground.

### 2. Best Interests

¶22 Mother also argues that terminating her parental rights was not in the children's best interests because the Department failed to establish grounds for termination. Terminating parental rights is in the children's best interests if the children will benefit from the termination or will be harmed if the relationship continues. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179 ¶ 20 (App. 2014). In determining whether the children will benefit from termination, relevant factors to consider include whether the current placement is meeting the children's needs, an adoption plan is in place, and if the children are adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016). Here, the record supports the juvenile court's finding that termination was in the children's best interests. The

Department supervisor testified that the children were in an adoptive placement that met their needs and were adoptable if the current placement could no longer adopt them. Furthermore, she testified that termination of Mother's parental rights were in the children's best interests because they deserved to live in a stable and permanent home free of substance abuse. Accordingly, Mother's argument fails.

**CONCLUSION**

¶23　　　For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA