377 P.3d 351

**TANYA K., Appellant,**

v.

**DEPARTMENT OF CHILD SAFETY, P.K., Appellees.**

**No. 1 CA–JV 15–0405**

Court of Appeals of Arizona, Division 1.

FILED 6/14/2016

John L. Popilek, P.C., Scottsdale, By John L. Popilek, Counsel for Appellant

Arizona Attorney General's Office, Phoenix, By Amber E. Pershon, Counsel for Appellees

Judge Patricia K. Norris delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

## OPINION

NORRIS, Judge:

¶1 Appellant Tanya K. appeals the juvenile court's order terminating her parental rights to her child, P.K., under a statute which authorizes a court to terminate parental rights when "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause." We hold a juvenile court should measure the "within the preceding two years" requirement from the date the court terminated the parent's rights to the first child to the date a party petitions to terminate the parent's rights to the second child.

1. The Arizona Legislature has made only immaterial changes to this statute since 2011. Thus,

## FACTS AND PROCEDURAL BACKGROUND

¶2 On June 12, 2013, the juvenile court terminated Tanya's parental rights to A.K. under Arizona Revised Statutes ("A.R.S.") section 8–533(B)(3) (Supp. 2015) (substance abuse).[1] On March 20, 2015, Tanya gave birth to P.K. Because P.K. tested positive for methamphetamine at birth, appellee, the Department of Child Safety ("DCS"), immediately obtained custody of P.K. On March 26, 2015, DCS petitioned to find P.K. dependent as to Tanya because she was "unable to provide proper and effective parental care and control due to substance abuse." DCS also alleged Tanya's long history of substance abuse had contributed to the termination of her parental rights to her seven other children. On May 7, 2015, DCS petitioned to terminate Tanya's parental rights to P.K. under A.R.S. § 8–533(A) and (B)(10). These statutory provisions read:

A. Any person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative, a foster parent, a physician, the department or a private licensed child welfare agency, may file a petition for the termination of the parent-child relationship alleging grounds contained in subsection B of this section.

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court shall also consider the best interests of the child:

* * *

10. That the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause.

¶3 The juvenile court held a termination adjudication hearing on October 7, 2015. Measuring the "within the preceding two years" requirement of A.R.S. § 8–533(B)(10) from the date the court terminated Tanya's

we cite to the current version of this statute throughout the opinion.

parental rights to A.K. to the date DCS petitioned to terminate Tanya's parental rights to P.K. and finding Tanya unable, at the time of the hearing, to discharge her parental responsibilities to P.K. for the same reason the juvenile court had terminated her parental rights to A.K.—substance abuse—the juvenile court terminated Tanya's parental rights to P.K.

## DISCUSSION

### I. "Within the Preceding Two Years"

¶4 On appeal, Tanya argues the "within the preceding two years" requirement of A.R.S. § 8–533(B)(10) should be "measured from [the] date of [the] severance" of the first child "to the date of [the] severance trial in the second matter."[2] Reviewing this issue de novo, we disagree. *McNamara v. Citizens Protecting Tax Payers*, 236 Ariz. 192, 194, ¶5, 337 P.3d 557, 559 (App.2014) (appellate court reviews legal questions and issues of statutory interpretation de novo).

¶5 "When interpreting a statute, we look to the plain meaning of the language as the most reliable indicator of legislative intent and meaning." *Grubaugh v. Blomo ex rel. Cty. of Maricopa*, 238 Ariz. 264, 266, ¶6, 359 P.3d 1008, 1010 (App.2015) (citations omitted). "When the statute's language is 'clear and unequivocal, it is determinative of the statute's construction.'" *Id.* (quoting *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). We "apply the clear language of a statute unless such an application will lead to absurd or impossible results." *Id.* (citations omitted). Moreover, we read a statute by "giving meaningful operation to all its provisions, and by considering" the statute's context. *State v. Proctor*, 196 Ariz. 557, 561, ¶12, 2 P.3d 647, 651 (App. 1998).

¶6 Under A.R.S. § 8–533(A), "[a]ny person or agency that has a legitimate interest in the welfare of a child … may file a petition for the termination of the parent-child relationship alleging" certain enumerat-ed grounds. Section 8–533(B)(10) authorizes a juvenile court to terminate parental rights if it terminated the parent's parental rights to another child "within the preceding two years for the same cause" and the parent is "currently unable to discharge parental responsibilities" for the "same cause." Although A.R.S. § 8–533(B)(10) does not specify an ending date, when read in context with A.R.S. § 8–533(A), the statutory language directs a court to measure the "within the preceding two years" requirement from the date the court terminated the parent's rights to the first child to the date an interested party petitions to terminate the parent's rights to the second child. Indeed, an interested party seeking to terminate parental rights must allege the grounds for such termination at the time it petitions for termination. A.R.S. § 8–533(A). Thus, under the plain language of the statute, the clock stops when the interested party files the petition to terminate parental rights to the second child.

¶7 Further, if there is any ambiguity in the statute's language, the statute's history, including its spirit and purpose, illuminates what the Legislature intended. *State ex rel. Ariz. Registrar of Contractors v. Johnston*, 222 Ariz. 353, 355, ¶5, 214 P.3d 441, 443 (App.2009) ("If ambiguity exists, we apply secondary principles of statutory construction and consider other factors, including the history, context, spirit and purpose of the law, to glean legislative intent."). In 1997, "[a]fter the deaths of several children … known to Child Protective Services" the year before, "a group of legislators initiated a working group to look at child welfare issues." Arizona State Senate, Fact Sheet for H.B. 2255, 43d Leg., 1st Reg. Sess. (May 15, 1997) [hereinafter "Fact Sheet"]; *see also Ballesteros v. Am. Standard Ins. Co. of Wisconsin*, 226 Ariz. 345, 349–50, ¶20, 248 P.3d 193, 197–98 (2011) (court may rely on non-legislator's statements if circumstances provide sufficient guarantees that the statements reflect legislative intent). "The working group recommended a number of changes to improve the child welfare sys-

2. DCS argues Tanya "has waived this argument by not raising it or objecting to contrary argument in the juvenile court." We reject DCS's waiver argument. Although Tanya did not raise this argument in the juvenile court, the juvenile court raised and addressed the issue.

tem," including "changes to the severance statutes in order to get kids into permanent homes sooner." Fact Sheet. These changes included the addition of what is now A.R.S. § 8–533(B)(10) as a ground for terminating parental rights.

¶ 8 Our reading of "within the preceding two years" is consistent with the Legislature's intent to expedite termination proceedings for the welfare of children. Measuring the preceding two years from a date other than the filing date of the petition to terminate parental rights to the second child, such as the date of the termination hearing as Tanya argues, would allow the mere passage of time to moot A.R.S. § 8–533(B)(10) as a ground for termination. Indeed, such would be the case here. DCS petitioned to terminate Tanya's parental rights within two years after the juvenile court terminated her parental rights to A.K., but the two-year period had expired by the time of the termination hearing for P.K. Tanya's construction of the statute would neither expedite termination proceedings nor "get kids into permanent homes sooner." Fact Sheet. To the contrary, it would encourage parties opposing termination to delay the termination adjudication hearing, thereby delaying termination proceedings and a child's placement in a permanent home. Therefore, we agree with the juvenile court that "within the preceding two years" must be measured from the date the court terminated a parent's parental rights to the first child to the date a party petitions to terminate the parent's parental rights to the second child.

¶ 9 Although the end date for "within the preceding two years" is the filing date of a petition to terminate, the juvenile court must still determine whether, at the time of the termination hearing, the parent is then "currently unable to discharge parental responsibilities due to the same cause." As discussed below, the juvenile court found Tanya, at the time of the termination hearing, was unable to discharge her parental responsibilities because of the same cause that led the juvenile court to terminate her parental rights to A.K.—substance abuse.

## II. Tanya's Request for More Time to Participate in Services

¶ 10 Tanya argues DCS delayed in providing her services and, accordingly, the juvenile court should not have terminated her parental rights to P.K. without first allowing her "more time to participate in services." Because the record contains reasonable evidence that DCS provided Tanya adequate time and opportunity to participate in reunification services, we reject this argument. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App.2009) (appellate court reviews the evidence and reasonable inferences to be drawn from the evidence in light most favorable to sustaining the court's decision, and will affirm termination order supported by reasonable evidence).

¶ 11 Section 8–533(B)(10) does not explicitly require DCS to provide services. Nevertheless, in *Mary Lou C. v. Arizona Department of Economic Security*, we held DCS's predecessor was required to make "reasonable effort(s)" to provide services or prove that efforts "would be futile." 207 Ariz. 43, 49, ¶ 15, 83 P.3d 43, 49 (App.2004). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers," but it must provide the parent "with the time and opportunity to participate in programs designed to help [him or] her become an effective parent." *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App.1994). Similarly, DCS is not required to leave the window of opportunity for remediation open indefinitely. *Maricopa Cty. Juv. Action No. JS–501568*, 177 Ariz. 571, 577, 869 P.2d 1224, 1230 (App.1994) (citations omitted).

¶ 12 Tanya lost her parental rights to seven other children before P.K. due largely to substance abuse. When Tanya gave birth to P.K., both she and P.K. tested positive for methamphetamine. After she left the hospital, Tanya did not attempt to contact DCS even though she knew DCS had taken custody of P.K. DCS specialists attempted to call Tanya at the phone numbers on file, but "[e]very time[,] ... the woman who answered would either hang up as soon as the [s]pecialist asked if she was talking to Tanya, or it would go to voicemail and no return

158

calls were made." Thus, DCS could not reach Tanya until the initial dependency hearing on May 11, 2015, when she provided a valid phone number.

 ¶ 13 Three days after the dependency hearing, DCS referred Tanya to TERROS, and the following day arranged for drug testing through TASC. DCS also arranged visits between Tanya and P.K. shortly after that hearing, and assigned Tanya a parent aide. Tanya missed her first intake appointment with TERROS. When she did complete an intake in late July 2015, she tested positive for methamphetamine and alcohol. She did not participate in further substance abuse testing or treatment even though TASC was available to her through September 3, 2015. The record therefore contains reasonable evidence that DCS provided Tanya enough time to participate in substance abuse services that would help her become an effective parent, but she failed to do so. Indeed, at the hearing Tanya admitted she had not "done the services that are required."

¶ 14 Tanya nevertheless suggests on appeal that she was unable to participate in services because she lived a "long way" from services and did not have transportation. As DCS points out, however, Tanya did not need transportation to call TASC, and yet from May 15, 2015 through September 3, 2015, she called TASC only seven times. Further, Tanya testified she could "take a ride when [she could] get it" from a friend, yet she apparently never utilized this option to engage in substance abuse services. And finally, even after she moved closer to the service locations and DCS provided her with cab service in July 2015, Tanya still failed to participate in services. Accordingly, DCS provided Tanya adequate time to participate in services.[3]

## CONCLUSION

¶ 15 For the foregoing reasons, we affirm the juvenile court's order terminating Tanya's parental rights to P.K.

---

3.  Tanya does not challenge the juvenile court's finding that termination was in P.K.'s best inter-    ests.