NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SARAH R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.R., L.H., A.M., *Appellees*.

No. 1 CA-JV 17-0317
FILED 12-12-2017

Appeal from the Superior Court in Maricopa County
No. JD32540
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Law Office of Denise L. Carroll, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        Sarah R. ("Mother") appeals the juvenile court's order terminating her parental rights to C.R., L.H., and A.M. ("the children"). Mother contends the court erred in finding the Department of Child Safety ("DCS") made reasonable efforts to provide reunification services because DCS conditioned certain services on Mother maintaining thirty days' sobriety.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of C.R., born in 2002; L.H., born in 2012; and A.M., born in 2014.  The children all have different biological fathers, none of whom are parties to this appeal.[1]

¶3        In April 2016, DCS took custody of the children[2] because they were in an unsafe living environment;[3] Mother's and B.M.'s substance abuse; reports of domestic violence between Mother and B.M.;[4] and because

---

[1]        At the time of the termination hearing, Mother was legally married to C.R.'s biological father, J.R., who was the presumptive father of L.H. and A.M.; L.H.'s biological father, John Doe, was unknown; and Mother and the children were living with A.M.'s biological father, B.M.  The fathers' parental rights were terminated concurrently with Mother's.

[2]        During the dependency, C.R. was placed with a family friend and L.H. and A.M. were placed together with a foster family.

[3]        The DCS program supervisor testified that the children were living in an unlicensed recreational vehicle with minimal food, mold growing in the vehicle, no working toilet or shower, and with trash strewn about the vehicle, including empty beer cans and dirty diapers.

[4]        On one occasion, all three children were present when B.M. punched Mother.

C.R.'s educational needs were not being met. Soon after the children were removed from Mother's care, Mother tested positive for methamphetamines. DCS then filed a dependency petition, alleging the children were dependent as to Mother on the ground of neglect, and the juvenile court granted the petition.

¶4    Following the dependency finding, the initial case plan was for family reunification. DCS referred Mother for the following services: case management, early childhood assessment, medical and dental, parent aide, parent locate, substance abuse assessment and treatment, and visitation.

¶5    In February 2017, DCS moved to terminate Mother's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), based on Mother's inability "to discharge [her] parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and [because] there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3) (2016). DCS also moved to terminate Mother's parental rights pursuant to A.R.S. § 8-533(B)(8), because the children were in an out-of-home placement for a period of six and nine months respectively, and Mother had "substantially neglected or wilfully refused to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(a)-(b).

¶6    Mother contested the termination, and a final hearing was held on June 12, 2017. At the hearing, the DCS program supervisor testified that DCS provided Mother with urinalysis testing, substance abuse treatment program referrals, visitation and transportation, and gave Mother information about behavioral health organizations and the services they could provide her. Mother agreed to utilize these services, and acknowledged she needed to participate in these services to be allowed to reunify with the children. Certain DCS service referrals, such as parent aide and a psychological evaluation, were dependent on Mother maintaining thirty days' sobriety.[5] The DCS program supervisor testified that DCS' requirement that a parent demonstrate thirty days' sobriety before

_____

[5]    Mother also did not qualify for domestic violence counseling or individual counseling because both referrals were conditioned on Mother demonstrating at least thirty days' sobriety.

receiving certain services was reasonable because the services are not effective if a parent was under the influence of drugs or alcohol.

¶7        As a part of the services DCS offered, Mother received a referral to TERROS, for behavioral health and substance abuse treatment, and TASC, for drug testing. Mother, however, did not complete any of these programs and went to only one intake. Mother later testified that, in her opinion, the services for which DCS referred her did not meet her needs, and that she told DCS she needed individual counseling, but DCS did not refer her for such counseling. Mother also testified that in December 2016, she was admitted to a detox facility, where she spent around twelve days, but in her view the program was unsuccessful because she did not receive any psychological help, and she immediately relapsed once she left the detox program. Mother further testified she contacted some of DCS' transitional housing referrals, but was unable to receive immediate help due to lack of available space. Mother also tried to make a psychiatric appointment with an outside provider, but was unable to be seen due to her open TERROS referral.

¶8        Approximately one month before the termination hearing, and during the termination hearing, Mother was undergoing inpatient treatment at Lifewell and was receiving individual counseling for substance abuse.[6] At the hearing, Mother requested the juvenile court grant her additional time to complete the Lifewell program and reunify with the children. The court took Mother's request and the termination issues under advisement.

¶9        On June 29, 2017, the juvenile court terminated Mother's parental rights on the grounds of prolonged substance abuse, pursuant to A.R.S. § 8-533(B)(3), and out-of-home placement for a period of six and nine months respectively, pursuant to A.R.S. § 8-533(B)(8)(a)-(b). The court found DCS had "offered a variety of services to [Mother], which were designed to help address . . . the issues that led to out-of-home placement or were designed to preserve the family relationship," and that Mother's

---

[6]        At the hearing, Mother admitted that Lifewell was a provider authorized by DCS and that DCS had offered her that referral at the outset of the dependency; however, Mother did not contact or otherwise seek assistance through Lifewell until just before the termination hearing.

contention that DCS provided her insufficient access to counseling was not supported by the evidence.[7]

¶10        The juvenile court further found it was in the children's best interests to terminate Mother's parental rights.   The court found maintaining the parent-child relationship would be detrimental to the children because of Mother's failure to complete substance abuse programs or maintain long-term sobriety.  The court acknowledged Mother's recent efforts to achieve sobriety, but noted that her participation in substance abuse treatment was "too little too late."

¶11        Mother timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

¶12        On appeal, Mother argues the juvenile court erred in finding DCS made reasonable efforts to provide her services.[8]  Specifically, Mother argues DCS' refusal to provide certain services before she demonstrated thirty days' sobriety is contrary to governing statutes.  DCS, in response, argues Mother waived any claims that DCS failed to make reasonable efforts to provide reunification services by failing to raise the issue before the termination hearing.[9]   We address Mother's appeal on the merits

---

[7]       The juvenile court found Mother could have obtained the requested counseling services through TERROS, or could have brought her complaints about insufficient services to the court's attention, but failed to do either.

[8]       Mother contends that because DCS did not provide sufficient services, the court could not make the statutory finding that her substance abuse would continue.  She does not challenge the termination on any other grounds.

[9]       DCS relies on *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, to support its argument that Mother waived her right to appeal the sufficiency of reunification services.  234 Ariz. 174 (App. 2014).  The mother in *Shawanee S.* did not raise the issue of insufficient services until appeal, and was found to have waived her rights to contest the services provided.  *Id.* at 175, ¶ 1. Here, Mother testified she told DCS before the termination hearing she needed individual counseling services.

because Mother testified at the termination hearing that she had previously told DCS she needed individual counseling.

¶13        We view the evidence in the light most favorable to sustaining the juvenile court's order and will overturn the court's findings only if they were clearly erroneous, meaning not supported by reasonable evidence. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998). Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). As relevant here, a juvenile court may terminate a parent's rights if it finds by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Additionally, the juvenile court must find by a preponderance of the evidence that termination is in the best interests of the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

¶14        In addition, DCS must show that it provided the parent with services "which offer a reasonable possibility of success" that a parent will be allowed to reunify with her children. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 187, ¶ 1 (App. 1999). DCS, however, is not required to provide a parent with every conceivable service, ensure a parent participates in the offered service, or undertake futile rehabilitative measures. *See Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157, ¶ 11 (App. 2016) (citation omitted); *Mary Ellen C.*, 193 Ariz. at 187, ¶ 1. *But see Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (A parent must have the time and opportunity to participate in programs "designed to help her become an effective parent.").

¶15        Contrary to Mother's assertions, reasonable evidence supports the juvenile court's findings.

¶16        The DCS program supervisor testified that DCS set family reunification goals for Mother, which required Mother to live drug-free, complete substance abuse treatment programs, and provide a safe and stable home free from domestic violence. To enable Mother to meet these goals, DCS provided Mother with substance abuse testing, visitation and transportation, and referred Mother to substance abuse treatment programs. Mother was offered additional complementary services, including individual counseling, a psychological evaluation, and domestic violence counseling, all conditioned on Mother maintaining thirty days'

sobriety.[10]  The DCS program supervisor testified that, in order for these complementary services to have a reasonable chance of success, the parent recipient of the services must first have demonstrated at least thirty days' sobriety.  Mother did not contest that evidence below, and on appeal cites no statistical data, expert opinion or cogent argument to the contrary.  While the applicable statutes are silent as to conditions DCS can place on a parent's access to authorized services, the case law construing the statutory obligations of DCS, as previously noted, consistently holds that DCS' obligations to provide services are limited to those services designed to offer a reasonable opportunity for success.  *See Tanya K.*, 240 Ariz. at 157, ¶ 11; *Mary Ellen C.*, 193 Ariz. at 187, ¶ 1.  *See also Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43 (App. 2004).

**¶17**          Here, DCS referred Mother for services in September 2016.  Mother had over eight months to participate in these services before the final termination hearing in June 2017.  As related to the services Mother claims were improperly withheld, Mother completed one TERROS intake, but did not complete any of the substance abuse programs authorized by DCS during those eight-plus months.  Mother did eventually check herself into the Lifewell residential treatment, but not until approximately one month before the final termination hearing.  While we commend Mother for finally engaging in meaningful substance abuse treatment, we agree, on this record, there was reasonable evidence for the juvenile court to terminate Mother's rights pursuant to A.R.S. § 8-533(B)(3).  We defer to the discretion of the juvenile court in declining on this record to extend the reunification period.  Further, the record establishes DCS timely provided Mother with sufficient substance abuse and other services designed to give Mother a reasonable opportunity to help her reunify with her family.  The fact that Mother chose to delay utilizing those services until one month before the termination hearing does not render the services offered and/or provided by DCS to be unreasonable or otherwise legally insufficient.

**¶18**          Mother does not challenge the juvenile court's finding that termination was in the children's best interests.  Nonetheless, we note that the record supports the finding.  The court found the continuation of the

---

[10]     We recognize the difficult position that a parent may be in because of DCS' decision to condition the receipt of certain services on the parent maintaining thirty days' sobriety.  Regardless of this challenge, we cannot say, on this record, that the court abused its discretion in allowing DCS to condition access to certain services, or in terminating Mother's parental rights.

parental relationship would harm the children because it would force them to remain in foster care while Mother attempted to overcome her substance abuse.

## CONCLUSION

**¶19** The juvenile court's order terminating Mother's rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA