NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE GUARDIANSHIP AS TO E.H.

No. 1 CA-JV 23-0196
FILED 05-21-2024

---

Appeal from the Superior Court in Maricopa County
No.  JD533502
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

---

**P A T O N**, Judge:

¶1 Michelle H. ("Mother") appeals the superior court's order granting permanent guardianship of her child, E.H., to the child's maternal aunts. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining the superior court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016). Mother has three children: E.H., born in 2018, an adult daughter, and a son, J.H. Only E.H. is involved in this appeal. E.H.'s father is not a party to this appeal.

¶3 In June 2020, police responded to a 911 call from J.H., who found Mother unresponsive from a fentanyl overdose. Mother was revived after receiving four doses of Narcan. Police found drugs and drug paraphernalia in the house that were accessible to J.H. About a month later, the Department of Child Safety ("DCS") filed a dependency petition alleging Mother and E.H.'s father neglected E.H. DCS specifically alleged Mother was "unwilling or unable to provide proper and effective parental care and control due to substance abuse."

¶4 DCS tried to implement an in-home safety plan and asked Mother to identify a responsible adult who could stay with her. Mother did not identify anyone, so DCS removed E.H. from Mother's home and placed E.H. with prospective guardians.

¶5 At a subsequent hearing, the court found E.H. dependent as to Mother and changed the case plan to family reunification. DCS offered Mother reunification services, including substance abuse testing and treatment, a psychological evaluation, counseling, parent-aide services, and supervised visitation.

¶6 Mother began testing for substances in July 2020 and, starting in September 2020, tested positive for fentanyl on numerous occasions for a little over a year. Mother also tested positive for cocaine in December 2021; this was the last time she participated in drug testing. Mother declined DCS's request for hair follicle testing in February 2023, and told DCS she would submit a urinalysis test, but she did not.

¶7 In July 2020, Mother started participating in supervised visitation with E.H. twice a week for two hours. DCS described Mother's supervised visits with E.H. at Mother's home as "positive." These supervised visits continued until December 2021.

¶8          Mother underwent a psychological evaluation in June 2021. The psychologist diagnosed Mother with major depressive disorder, child neglect, and a history of child sexual abuse. The psychologist recommended Mother receive mental health counseling to help her "learn emotional regulation, coping, stress management, and relationship skills[,]" as well as parenting classes "to learn and demonstrate adequate and healthy parenting skills." DCS helped Mother complete intake paperwork for mental health counseling, and she received a psychological evaluation but later self-referred to a different agency in order to be seen more quickly. In November 2021, Mother started engaging in mental health counseling, but by March 2023 she regularly cancelled or did not show up to appointments. Mother participated in and successfully completed parent-aide services in January 2022.

¶9          In June 2022, the superior court ordered DCS to provide Mother with visitation after Mother had issues scheduling visits due to DCS staff turnover. About a month later, Mother requested a show-cause hearing, arguing visitation had "been an ongoing issue for the past year" and DCS had not complied with the court's previous order. DCS responded that it had offered Mother supervised visitation by June 9, 2022, in compliance with the court's order, but Mother either cancelled or failed to confirm three visits. DCS requested that visitation remain open for an additional week but the visitation service closed when Mother failed to respond. In September 2022, Mother withdrew her show-cause hearing motion.

¶10         From February to July 2023, DCS could not reach Mother regarding services and thus could not assess her progress. During that time, the superior court changed the case plan to guardianship.

¶11         In August 2023, the superior court held a contested guardianship hearing. At the time of the hearing, E.H. had been living with her maternal aunts, who were also her prospective guardians, for over nine months. Mother testified that she had been unemployed for about three months. She also testified that she had only lived at her past two residences for a few months each and was evicted from one of them in January 2023.

¶12         In the superior court's permanent guardianship order, it found Mother did not have stable housing or employment throughout the case and "failed to make the necessary behavioral changes" to reunify with E.H. The court also found termination would not be in the child's best interests because E.H. expressed a desire to have contact with Mother, but found guardianship was in E.H.'s best interests. The court awarded

custody of E.H. to the guardians and permitted Mother to have supervised visitation with E.H. twice per month.

¶13        Mother timely appealed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

¶14        Mother asserts the superior court abused its discretion in granting the permanent guardianship, arguing no reasonable evidence supported its findings that DCS made reasonable reunification efforts and that further efforts would be unproductive and reunification was not in the child's best interests.

¶15        We will not reverse a permanent guardianship order unless it is clearly erroneous.  *See Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).  The superior court "is in the best position to weigh the evidence, observe the parties, [and] judge the credibility of witnesses." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).  We will accept the superior court's factual findings "unless no reasonable evidence supports those findings." *Id.*

¶16        The superior court may establish a permanent guardianship if it is in the child's best interests and the following requirements, as relevant here, are met: (1) the child was found dependent; (2) the child has been in the prospective permanent guardians' custody for at least nine months; (3) the child is in DCS or agency custody, and DCS or the agency has made reasonable reunification efforts and further efforts would be unproductive; and (4) the likelihood of adoption is remote or termination would not be in the child's best interests.  A.R.S. § 8-871(A)(1)–(4).  Mother only challenges the court's findings for the third requirement.  *See* A.R.S. § 8-871(A)(3).

¶17        As an initial matter, DCS argues that because the court determined DCS made reasonable reunification efforts and further efforts would be unproductive, we need not address Mother's argument challenging the court's finding that reunification was not in E.H.'s best interests.  *See* A.R.S. § 8-871(A)(3).  The superior court has discretion to decide whether to waive this requirement, and it did not appear to waive it here.  *See* A.R.S. § 8-871(A)(3) ("The court *may* waive this requirement if it finds one or more of the following . . .") (emphasis added).  Accordingly, we will review whether reasonable evidence supported the superior court's findings on (1) whether reunification was in E.H.'s best interests and (2)

4

whether DCS made reasonable reunification efforts and further efforts would be unproductive.

¶18        As to best interests, the superior court found that Mother was "unwilling or unable to properly care for" E.H., pursuant to Section 8-871(A)(3)(b), due to her lack of stable housing and employment throughout the case, and her failure to fully address her substance abuse issues.  At the guardianship hearing, Mother admitted that she was evicted from her most recent residence and had been unemployed for about three months.  Mother's inconsistent drug testing, positive drug tests, and failure to participate in substance abuse treatment reflect that she was unwilling or unable to properly care for E.H.  Based on this evidence, the court found that "Mother . . . failed to make the necessary behavioral changes in order to reunify with [E.H.] despite having over three years to do so."  The court further found that termination was not in E.H.'s best interests because "the child still wants contact with Mother" but found "guardianship [was] in the best interest of [E.H.]."  The record shows that reasonable evidence supported the court's best interests findings.

¶19        Reasonable evidence also supported the court's findings that DCS made reasonable reunification efforts over a three-year period and that further efforts would be unproductive.  *See* A.R.S. § 8-871(A)(3).  DCS does not need "to provide every conceivable service or to ensure that a parent participates in each service it offers."  *Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157, ¶ 11 (App. 2016) (citation omitted).  Rather, DCS is obligated to provide parents the "time and opportunity to participate" in services that have a "reasonable prospect of success."  *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999).  DCS offered Mother supervised visitation, substance abuse testing and treatment, a psychological evaluation, mental health counseling, and parent-aide services.  Initially, Mother participated consistently in supervised visitation with E.H. twice a week.  But she either cancelled or failed to confirm three visits in August 2022 and did not show up for appointments.  Due to Mother's unresponsiveness, the visitation service requested that the service close early.  DCS requested that it remain open for an additional week to give Mother time to respond, which it did, but Mother did not respond and the service closed in late August 2022.

¶20        Mother argues it was unreasonable for DCS to rely on an outdated psychological evaluation from June 2021, relying on *Maricopa County Juvenile Action No. JS-378*, 21 Ariz. App. 202 (1974).  In that case, we reversed the superior court's termination order in part because evidence of the mother's mental condition from a year prior to the termination trial was

insufficient to support her diagnosis. *Id.* at 205–06. But here, Mother missed psychiatric evaluations and testified that the last counseling session she attended was in December 2022. And although the psychological evaluation may have been outdated, DCS could not get in touch with Mother from February to July 2023 to offer her an updated evaluation.

¶21 Mother also argues DCS did not provide her "the time and opportunity to participate in reunification services with a reasonable prospect of success" because of DCS's staff turnover and alleged disregard for her medical issues. In its ruling, the superior court found that "despite the length of time that . . . passed and the significant efforts made, and services provided by [DCS]," Mother had not fully addressed the reasons E.H. came into DCS's care and found that DCS made reasonable reunification efforts.

¶22 In her opening brief, Mother does not cite to specific services or accommodations she asked for and did not receive. While DCS's staff turnover may have impacted Mother's visitation services, DCS complied with the court's order and offered visitation in June 2022. And despite Mother's medical issues, she had opportunities to participate in services. For example, after Mother was hospitalized in April 2023 for having suicidal thoughts, she was given an opportunity to participate in further mental health counseling but did not. The superior court did not err by finding DCS made reasonable efforts to reunify Mother and E.H.

¶23 The record also supports the superior court's finding that further reunification efforts would have been unproductive. Although Mother had positive supervised visitation, successfully completed parent-aide services, and enhanced her protective capacities, she inconsistently attended supervised visitation and did not demonstrate a commitment to mental health counseling or continued sobriety. In August 2022, Mother stopped confirming visitation times, and starting in June 2022, she either regularly cancelled or did not show up to her counseling appointments. While Mother claimed that the counseling service did not respond to her outreach attempts and that she did not receive calls about scheduling psychiatric evaluations, "[t]he Court [did] not find Mother's explanation for her inconsistency . . . [or] for missing [the] evaluations to be credible." And despite efforts from another counseling agency to reach out to her for an intake appointment, she did not respond.

¶24 Further, when Mother participated in drug testing, she consistently tested positive for fentanyl, demonstrating her unwillingness to remedy the cause for DCS becoming involved in her case—substance

abuse. DCS could not rule out substance abuse as a concern because Mother stopped taking drug tests after testing positive for cocaine in December 2021.

**¶25**      The record shows that Mother's contact with DCS throughout this case—spanning three years—was inconsistent. She failed to engage in services for at least a six-month period in 2023. The superior court did not find Mother's reasons for inconsistent participation to be credible, and we do not reweigh credibility determinations on appeal. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. Reasonable evidence supported the court's conclusion that Mother "failed to make the necessary behavioral changes in order to reunify with the child despite having over three years to do so." Reasonable evidence also supported the superior court's finding that further reunification efforts would have been unproductive. For these reasons, the court did not abuse its discretion in granting DCS's permanent guardianship motion.

## CONCLUSION

**¶26**      We affirm.

