NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO Y.W.

No. 1 CA-JV 25-0175

FILED 05-13-2026

Appeal from the Superior Court in Maricopa County
No. JD44683
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Anna V. Vaszar
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee Child Y.W.*

---

**MEMORANDUM DECISION**

---

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

¶1   Tyrell W. ("Father") appeals the termination of his parental rights as to Y.W., arguing the Department of Child Safety ("DCS") did not make diligent efforts to provide him reunification services. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2   Mother[1] gave birth to Y.W. in October of 2024. Father did not establish his paternity at birth. At birth, doctors diagnosed Y.W. with syphilis and substance-exposed to methamphetamine, THC, cocaine, and fentanyl. Mother admitted that she and Father used cocaine and THC together during the pregnancy. DCS removed Y.W. from her parents shortly after birth.

¶3   DCS began dependency proceedings in October of 2024. DCS alleged Y.W. was dependent as to Father because he was homeless and had substance-abuse problems. In December of 2024, the superior court held a pre-trial conference where both Mother and Father pled no contest to the allegations in the dependency petition. Because Father had not established his paternity, the superior court "suspended" the dependency findings as to Father until his paternity could be established.

¶4   DCS began providing Father reunification services in October of 2024. DCS offered Father paternity and drug testing, drug rehabilitation services, trauma therapy, Family Connections, and visitation services. DCS informed Father about the availability of services through face-to-face communication and service letters. Father did not consistently participate in services. Father appeared for one session of Family Connections, a program designed to promote positive behavioral change and help parents locate family and social supports, but stated he would not participate. He was closed out of the program in February of 2025. DCS referred Father to

---

[1]  The superior court terminated Mother's parental rights to Y.W. Mother is not a party to this appeal.

substance-abuse treatment in January 2025, but his referral was closed when he did not participate. Father attended two trauma therapy meetings but did not follow through with the program. Occasionally, Father attended supervised parenting time, but he often fell asleep during his visits with Y.W. In March 2025, Father completed a paternity test. That same day, Father tested positive for amphetamine, methamphetamine, and THC, and refused to provide hair samples for further drug testing. In April 2025, DCS canceled Father's supervised parenting time due to inconsistent participation. That month, the superior court issued an order establishing Father as Y.W.'s parent based on paternity test results.

¶5             In May 2025, law enforcement arrested Father for possession of cocaine, possession of drug paraphernalia, and trespassing. Father was released with conditions. Around the same time, the superior court found Y.W. dependent as to Father. The superior court also changed Y.W.'s case plan from family reunification to termination and adoption. In June 2025, DCS moved to terminate Father's parental rights based on substance abuse and six-months' time-in-care grounds. *See* A.R.S. § 8-533(B)(3); (B)(8)(b).

¶6             In June 2025, law enforcement arrested and jailed Father for possession of methamphetamine and drug paraphernalia. Father did not inform DCS of his arrest or incarceration. DCS did not learn Father was incarcerated until July 2025. Even after learning that Father was in jail, DCS had difficulty determining Father's location and contacting him. DCS did not provide reunification services to Father during this time. After DCS located Father, a caseworker met with him in jail and arranged for virtual parenting time with Y.W. beginning in August 2025. DCS provided no other services during Father's incarceration.

¶7             The superior court held a termination hearing in October 2025. DCS presented 13 exhibits, including reports about Father's participation in services, Father's drug test results, and court documents related to Father's arrests. Father's DCS case manager testified at the hearing about the reunification services DCS offered Father, Father's general lack of engagement with the reunification services, Father's incarceration, and Y.W.'s bond with her foster family.

¶8             After the termination hearing, the superior court issued an order terminating Father's parental rights to Y.W. based on substance abuse and six-months' time-in-care grounds. *See* A.R.S. § 8-533(B)(3) (B)(8)(b). The superior court also found DCS made reasonable and diligent efforts to provide Father with reunification services including Family Connections, supervised visitation, drug testing, substance abuse treatment, paternity

testing, and trauma therapy. Father timely appealed the termination order. We have jurisdiction under A.R.S. §§ 8-235, 12-120.21, and -2101(A)(1).

**DISCUSSION**

**¶9**   Father argues DCS did not make diligent efforts to provide reunification services. DCS argues Father waived this argument by failing to raise it during the termination hearing in superior court. We review a termination order for an abuse of discretion. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 29 (2023). We accept the superior court's factual findings when they are supported by reasonable evidence and inferences. *Id.* at ¶ 30. We accept the superior court's legal conclusions about the statutory grounds for termination unless they are clearly erroneous. *Id.* at 478–79, ¶ 31.

**¶10**   DCS has a constitutional duty to provide reunification services to a parent before seeking the termination of parental rights. *See Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 581 ¶ 18 (2021). When DCS alleges substance abuse as a ground for termination, DCS must undertake "reasonable rehabilitative measures" to remedy the substance abuse. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 n.3 (App. 2005). When DCS alleges time-in-care grounds, A.R.S. § 8-533(B)(8) requires DCS to make "a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8); *see also Jessie D.*, 251 Ariz. at 581, ¶ 18 (explaining DCS must "engage in reunification efforts on constitutional grounds as a necessary element of any state attempt to overcome . . . the fundamental liberty interest of the natural parents in the care, custody and management of their child" (cleaned up)). However, DCS is not required to offer every possible service to a parent or ensure that a parent participates in reunification services, if it provides a parent with the time and opportunity to engage with reunification services and improve as a parent. *Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157, ¶ 11 (App. 2016). Nor is DCS "required to leave the window of opportunity for remediation open indefinitely." *Id.*

**¶11**   The superior court found DCS provided reunification services to Father. That finding is supported by reasonable evidence and inferences. *See Brionna J.*, 255 Ariz. at 478, ¶ 30. Father does not argue that services provided by DCS before the superior court established his paternity should be excluded from consideration. As discussed, *supra* ¶ 4, DCS provided Father a variety of services beginning in October 2024. For the nine months between October 2024 and June 2025, Father failed to participate consistently in some of the services DCS offered, did not participate in drug

rehabilitation, and refused to participate in hair-follicle testing and Family Connections therapy. The superior court terminated Father's parental rights in October 2025. Father had the time and opportunity to engage in these services but declined to do so.

¶12 Father argues that the superior court abused its discretion by finding DCS made diligent efforts to provide him reunification services because DCS failed to provide him with services between June and August 2025, while he was incarcerated. We disagree. DCS actively offered Father reunification services between October 2024 and May 2025, but Father failed to engage with those services in any meaningful way. And after his incarceration, DCS offered parenting time, and Father never requested additional services. Nor does he now identify services that DCS should have provided for that three-month incarceration period. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014) (finding waived objection to adequacy of reunification services if a parent fails to raise the issue and give DCS "a reasonable opportunity to address the matter"); *In re C.C.*, 1 CA-JV 24-0017, 2024 WL 3579920, at *6, ¶ 39 (App. July 30, 2024) (mem. dec.) ("To the extent Father faults DCS for failing, after his incarceration, to provide services beyond virtual visitation, he never requested any additional services, nor does he identify any other service DCS should have offered but didn't."). Based on this record, the superior court did not abuse its discretion by finding that DCS made diligent efforts to provide Father with reunification services.

¶13 Father does not otherwise contest the superior court's grounds for termination or best interest findings, so we need not address them further. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000).

## CONCLUSION

¶14 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR

5